UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

------------------------------------------

In re:

Synergy Graphics, Inc.,

                Debtor.

Case No.  08-45828
Chapter 11 Case

------------------------------------------

**SECOND AMENDED
PLAN OF REORGANIZATION
OF
SYNERGY GRAPHICS, INC.,
A MINNESOTA CORPORATION
August 20, 2009**

Thomas J. Flynn (30570)
LARKIN HOFFMAN DALY & LINDGREN Ltd.
1500 Well Fargo Plaza
7900 Xerxes Avenue South
Bloomington, Minnesota  55431-1194
952-835-3800

Attorneys for Synergy Graphics, Inc.

# TABLE OF CONTENTS

ARTICLE I.       INTRODUCTION ............................................................................1

ARTICLE II.      DEFINITIONS .............................................................................1

ARTICLE III.     UNCLASSIFIED CLAIMS.................................................................3

ARTICLE IV.      CLASSIFICATION AND TREATMENT OF CLAIMS AND
                 INTERESTS .................................................................................4

ARTICLE V.       IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS
                 UNDER THE PLAN .........................................................................12

ARTICLE VI.      GENERAL PROVISIONS .................................................................12

ARTICLE VII.     MEANS OF EXECUTION OF PLAN AND FEASIBILITY ..........................14

ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
                 ADMINISTRATIVE CLAIMS ............................................................15

ARTICLE IX.      ALTERNATIVES TO THE PLAN OF REORGANIZATION .......................15

ARTICLE X.       MODIFICATION OF THE PLAN........................................................16

ARTICLE XI.      CONTINUING JURISDICTION OF THE BANKRUPTCY COURT.............16

ARTICLE XII.     CONTESTED CLAIMS....................................................................16

ARTICLE XIII.    RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS ...........................17

ARTICLE XIV.     DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION ................17

ARTICLE XV.      MISCELLANEOUS PROVISIONS.....................................................18

# ARTICLE I.

## INTRODUCTION

Synergy Graphics, Inc., a Minnesota corporation, hereby proposes the following plan of reorganization (hereinafter "the Plan") pursuant to United States Bankruptcy Code, Title 11 of the United States Code.

# ARTICLE II.

## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth.  Any terms contained in this Plan that are not specifically defined shall have the meaning provided for in the Bankruptcy Code, unless the context otherwise requires.  To the extent any term defined herein conflicts with the definition in the Bankruptcy Code, the Bankruptcy Code definition will prevail.

"Allowed Amount", "Allowed Claim" or "Allowed Interest" means a claim or interest to the extent that:

    (a)    a proof of such claim or interest has been

        (i)    timely filed,

        (ii)    deemed filed pursuant to Bankruptcy Code § 1111(a),

        (iii)    late filed with leave of the court after notice and opportunity for hearing given to counsel for the debtor and counsel for the committee of unsecured creditors; and

    (b)    (i)    that is not a contested claim, or

        (ii)    that is allowed (and only to the extent allowed) by a final order.

"Avoidance Actions" means claims made under 11 U.S.C. §§ 510, 542, 544, 545, 547, 548, 549, 500 and 553.

A claim asserted by any professional seeking compensation in connection with this case is an allowed claim only to the extent that the claim is allowed by order of the court after notice and hearing as provided in the Bankruptcy Code.

"Bankruptcy Court" or "Court" means this court, a unit of the United States Bankruptcy Court for the District of Minnesota, or any other court having competent jurisdiction to enter an order confirming the Plan.

"Company" or "Debtor" means Synergy Graphics, Inc.

"Confirmation Date" means the date of entry of an order confirming the debtor's Plan.

"Effective Date" means the eleventh business day following the filing date of the final order confirming this Plan.

"Interest" means the equity interest of any shareholder in the debtor.

"Net Proceeds" means the total proceeds received from recoveries under Avoidance Actions, less reasonable costs, expenses and attorneys' fees.

"Plan" means this Chapter 11 plan of reorganization and any amendments, or modifications thereto.

"Pro Rata Share" means, as to a claimant, the amount determined by multiplying the total amount of debtor's payment to a particular class by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total amount of all allowed claims in that class.

# ARTICLE III.

## UNCLASSIFIED CLAIMS

A.     Unclassified Claims.

Unclassified claims include:

1.     Quarterly fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6).

2.     Post-petition claims, incurred in the ordinary course of Debtor's business other than those listed in paragraph (c) below.

3.     Allowed administrative expense claims, except as otherwise classified herein, including:

   a.     Allowed fees and expenses of counsel and accountants, for the Debtor pursuant to 11 U.S.C. § 503(b).

4.     Administrative claims of taxing authorities for post-petition taxes. Debtor is current on all post-petition taxes.

Treatment:

The Allowed Amounts of the foregoing claims will be satisfied by payment in full on the effective date, unless otherwise agreed to by the particular claimant, to the extent not otherwise paid in the ordinary course of business as the same become due or as agreed upon by a particular claimant. Debtor will continue to pay all court fees and quarterly trustee fees, and all other trustee fees that come due until the Chapter 11 case is closed, converted or dismissed, as required by 28 U.S.C. § 1930, and subject to any amendments to the Bankruptcy Code made retroactively applicable to this Case. After confirmation, the Debtor agrees to submit quarterly operating reports to the U.S. Trustee, in the format proscribed by the Trustee, until the case is closed, dismissed or converted.

5.  Claims of taxing authorities for pre-petition taxes entitled to priority by reason of 11 U.S.C. § 507(a)(8). Debtor is not indebted to any taxing authority, for pre-petition debt.

Treatment:

To the extent any such claim does arise, the Allowed Amount arising under § 507(a)(8) will, unless otherwise agreed, be paid, with interest, at the rate set forth in applicable state or federal provisions regarding interest on unpaid taxes under a plan of reorganization. Such taxes will be payable monthly over a period not to exceed 48 months from the date of the filing of the petition. To the extent such claims constitute penalties or nonpriority taxes, they will be treated as a general unsecured claim and paid under Class IV, below.

## ARTICLE IV.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Classified Claims against the Debtor are set forth below, along with the treatment to be afforded each Class.

A.  Classified Claims and Interests.

1.  Class I:  Secured Claim of (Fifth Third Bank ("Fifth Third").

This class consists of the claim of Fifth Third in the total amount of approximately $14,200,000 (the "Fifth Third Loans"), under the terms of (i) revolving and term loan agreement, notes, security agreements, guaranties, and related documents between Fifth Third and Synergy Graphics, Inc., and Synergy Graphics Property, LLC (the "Fifth Third SGI Loan Documents") and (ii) revolving and term loan agreements, notes and security agreements and related documents between Fifth Third and Synergy Web Graphics, Inc. (the "Fifth Third SWG Loan Documents"), which loans were guaranteed by the Debtor and cross-collateralized with the Debtor's assets (collectively, the "Fifth Third Loan Documents"). The Fifth Third Loans are

4

secured by a blanket first-priority lien (subject to the relative priorities of the SBA in the Subject Equipment, as described in Class II below) in all pre-petition and post-petition assets of the Debtor, including without limitation, the Debtor's accounts receivable, inventory, equipment, and general intangibles, 50 percent of the Avoidance Actions under Chapter 5 of the Bankruptcy Code, and all other tangible and intangible assets (the "Fifth Third Collateral"). The secured portion of Fifth Third's claim will be an Allowed Claim in the amount of $8,200,000 (the "Allowed Fifth Third Class I Secured Claim") and shall be paid as follows:

Treatment:

The full amount of the Allowed Fifth Third Secured Claim shall be paid according to the terms of an amended and restated loan agreement, notes and security agreements and related agreements in form and substance acceptable to Fifth Third and Debtor ("New SGI Debt"), of which the material business terms are set out on Exhibit A attached to this Plan and are summarized as follows:

(i) a revolving credit line of up to $4.2 million subject to a borrowing base calculated based upon percentage of eligible accounts receivable and inventory bearing interest at the prime rate announced from time to time by Fifth Third plus two, which revolving credit line terminates two years after the Plan of Reorganization is confirmed, and

(ii) a discretionary line of credit up to $1.2 million that Fifth Third, in its sole discretion, concludes is appropriate to fund additional working capital needs bearing interest at prime announced from time to time by Fifth Third plus two, which facility terminates one year after the Plan of Reorganization is approved, and

(iii) Term loans (A, B and C), due in two years, in the aggregate amount of $1.9 million that bear interest at a fixed rate equal to 5%, subject to change in rate by Fifth Third one year

after the Plan of Reorganization is approved, maturing two years after the Plan of Reorganization is confirmed and having level principal and interest payment based on an assumed term of seven years except that these notes are subject to acceleration if the revolving committed line is defaulted or paid-off, and

(iv) a term loan in the approximate amount of $4.0 million that bears interest payable monthly at 2.5% that is payable in full ten years after the Plan of Reorganization is approved except that this note is subject to acceleration if the revolving committed line is defaulted; this term note will have deferred financing fee equal to 50% of net income before taxes and the deferred financing fee is payable within 120 days after each fiscal year end. Fifth Third will retain its lien on all of the Fifth Third Collateral until the entire amount of Fifth Third's New SGI debt is paid in full and all commitments of Fifth Third to extend financial accommodations to SGI have been terminated.[1]

The remaining amount of Fifth Third's debt related to the Fifth Third SWG Loan Documents, in the approximate amount of $6.0 million, will be treated as a general unsecured claim under Class V, below. Fifth Third will, upon confirmation of a Plan of Reorganization proposed by the debtor, with treatment of Fifth Third's claim as set forth herein, agree to waive its right to receive a portion of amounts to be paid to general unsecured creditors under Class V (as set forth in Class V). The Debtor also believes that Fifth Third will vote its general unsecured claim to approve the plan.

---

[1] On or before 10 days prior to the last day for filing objections to the confirmation of the Plan, the Debtor will file with the Court a Supplement to the Plan containing forms of the definitive loan documentation governing the New SGI Debt, which documents may be redacted to exclude proprietary information. After such filing, copies of such forms may be obtained by request to the Debtor's counsel.

2.    <u>Class II: Secured Claim of the Small Business Administration ("SBA")</u>. This Class consists of the secured claim of the SBA under two separate Loans:

(i) <u>The SBA Loan A</u>. Loan A consists of a Section CDC/504 SBA Loan PCL 930-842-400 payable to Twin Cities Metro Certified Development Company (the administrative agent for the SBA), dated November 23, 2005 in the original amount of $482,000 (the "SBA Loan A") including a note, loan agreement guaranties and security agreement (the "SBA Loan A Loan Documents"). The SBA Loan A is secured by a <u>second</u> position security interest in specific equipment listed on Schedule A (the "SBA Loan A Collateral"). Fifth Third Bank holds the first secured position in the equipment on Schedule A as security for its allowed secured claim of $353,500. As of the filing date, the outstanding obligation of the Debtor for SBA Loan A is approximately $369,569. The Debtor believes the value of the collateral in Schedule A is approximately equal to Fifth Third Bank's first secured allowed claim of $353,550, and

(ii) <u>The SBA Loan B</u>. Loan B consists of a Section CDC/504 SBA Loan 2111256005 payable to Twin Cities Metro Certified Development Company, dated July 27, 2006 in the original amount of $926,000 (the "SBA Loan B") including a note, loan agreement guaranties and security agreement (the "SBA Loan B Documents"). The SBA Loan B is secured by a <u>second</u> position security interest in specific equipment listed on Schedule B (the "SBA Loan B Collateral"). Fifth Third Bank holds the first secured lien position in the equipment on Schedule B as security for its allowed secured claim of $776,600. As of the filing date, the outstanding obligation of the Debtor for SBA Loan B is approximately $767,057. The Debtor believes the total value of the collateral in Schedule B is approximately $1,101,600 which is $325,000 higher than Fifth third Bank's first secured allowed claim of $776,600 on such collateral.

Treatment:

The secured claim of the SBA for its two Loans shall be treated as follows:

(i) The SBA Loan A. SBA's security interest in Loan A Collateral will be extinguished. SBA shall have an allowed general unsecured claim for $369,569, the outstanding obligation of Debtor for Loan A.

(ii) The SBA Loan B. The total allowed secured claim of the SBA under SBA Loan B will be paid up to the value of the SBA Loan B Collateral, $325,000, the extent the value thereof is in excess of first position allowed secured claim of $776,600 of Fifth Third Bank. The Allowed Amount of the SBA Loan B secured claim shall be paid in fully amortized equal monthly installments at 5% for seven years commencing within 30 days after the effective date of the Plan. There shall be no penalty for pre-payment. The SBA will retain its second secured position in the SBA Loan B Collateral, until the full Allowed Amount of the SBA Loan B secured claim is paid in full. Except specifically as set forth herein, all other terms of the SBA Loan B Documents will remain in full force and effect. The remaining amount of the claim of the SBA related to SBA Loan B, $440,057, shall be treated as general unsecured claim under Class V below.

3. Class III: Secured Claim of TCF Financial Corporation ("TCF").

This class consists of the secured claim of TCF arising out of a capital lease and related documents (the "TCF Loan Documents") in the approximate amount of $150,000. Such loan is secured by certain equipment held by the Debtor (the "TCF Collateral"). The parties have agreed the collateral has a value of $35,000.

<u>Treatment:</u>

Debtor intends to enter into a stipulation with TCF relating to the payment of adequate protection and claim treatment under a Plan of Reorganization. Pursuant to that expected agreement:

Of the total claim of approximately $150,000, the Allowed Amount of the TCF secured claim shall be paid in the amount of $35,000 (less payments made pursuant to the stipulation, if any), which amount shall be paid in full, in fully amortized equal monthly installments at 6 percent for a period of 36 months beginning within 30 days after confirmation, and each month thereafter, until paid in full. The unsecured portion of TCF's claim in the amount of $115,000 shall be treated as an Allowed Claim and paid as a general unsecured claim under Class V, below.

TCF shall retain a lien and security interest in the TCF Collateral, as set forth above, until the principal balance of the Allowed Amount of the TCF secured claim, along with all accruing interest, is paid in full. Except as otherwise provided herein, all other terms and conditions of the TCF Loan Documents (and stipulation, if any) shall remain in full force and effect.

    4.    <u>Class IV: Secured Claim of Key Equipment Finance, Inc. ("Key")</u>.

This class consists of the secured claim of Key arising out of a capital lease and related documents (the "Key Loan Documents") in the approximate amount of $112,000. Such loan is secured by certain equipment held by the Debtor (the "Key Collateral"). The Debtor believes that the collateral has a value of $30,000.

<u>Treatment:</u>

Of the total claim of approximately $112,000, the Allowed Amount of the Secured claim shall be paid in the amount of the value of the collateral, which amount shall be paid in full, in

fully amortized equal monthly installments at 6 percent for a period of 36 months beginning

within 30 days after confirmation, and each month thereafter, until paid in full. The unsecured

portion of Key's claim shall be treated as a general unsecured claim under Class V, below.

Key shall retain a lien and security interest in the Key Collateral, as set forth above, until

the principal balance of the Allowed Amount of its secured claim, along with all accruing

interest, is paid in full. Except as otherwise provided herein, all other terms and conditions of the

Key Loan Documents shall remain in full force and effect.

     5.    <u>Class V: General Unsecured Claims</u>.

This class shall consist of allowed unsecured claims not entitled to priority and not treated

in any other class in the Plan, including the unsecured portion of any secured classes claim,

including the unsecured portion of Class I, Class II, Class III and Class IV claims. The allowed

claims in Class V are in the approximate amount of $14,000,000 (including Fifth Third Bank's

Class V claim of approximately $6,000,000). The holders of general unsecured claims shall be

treated as follows:

<u>Treatment</u>:

    (a)    <u>Payments</u>. Subject to the early payment election in paragraph (b) below, the

holder of a Class V allowed claim will be paid their pro rata share of the sum of $350,000. The

payment of said sum will be made in four equal bi-annual installments beginning March 15, 2010

in the amount of $87,500; September 15, 2010 in the amount of $87,500; March 15, 2011 in the

amount of $87,500 and September 15, 2011 in the amount of $87,500.

    (b)    <u>Early Payment Election</u>. Any holder of a Class V allowed claim may elect to take

$250.00 payable on March 15, 2010 as full settlement of their allowed unsecured claim

(individually, the "Early Payment Amount"; collectively, "Early Payment Sum"). Any Early

Payment Sum will reduce the $350,000 total payment dollar for dollar beginning with the first payment due March 15, 2010 (the "Remaining Balance Due"). After any such reduction, the total Class V claim will be reduced by the sum of any allowed Class V claims electing the Early Payment Amount (the "Remaining Class V Claims"). Each holder of a general unsecured claim in the Remaining Class V Claims will receive their pro rata share of the Remaining Balance Due. Fifth Third Bank has agreed to waive its right to payments under parts (a) and (b) of this section if: (i) the Debtor's Plan of Reorganization is confirmed, and (ii) the treatment given to Fifth Third Bank is as set forth under Class I, above.

(c) <u>Avoidance Actions</u>. In addition to the above payments, each of the Remaining Class V Claims shall receive its pro rata share of 50% of the Net Proceeds of every fraudulent transfer or preference action brought under Chapter 5 of the Bankruptcy Code, with Fifth Third Bank receiving 50% of any such recoveries.

Such payments under (a), (b) and (c) (if any), above shall be in full satisfaction of each Allowed Amount of all general unsecured claims, including Fifth Third Bank's Allowed unsecured Claim.

6. <u>Class VI: Equity Interests</u>.

This class shall consist of the allowed equity or ownership interests of the Debtor.

<u>Treatment</u>:

Don Dale, Mike O'Meara, Robert Schafer and Jim Scalise shall remain as the 46%, 46%, 5% and 3% owners and shareholders, respectively, of the Debtor, unaffected under the Plan.

7. <u>Executory Contracts and Unexpired Leases</u>

Attached to the Plan and marked as Exhibit B is a list of executory contracts and leases to which the Debtor is a party. As to each such contract or lease, the exhibit indicates whether

Debtor has assumed the lease, will assume the lease or intends to reject or rescind the lease or contract. Any executory contract not listed or scheduled is hereby deemed rejected.

## ARTICLE V.

## IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN

Unclassified Claims and Class VI interests are unimpaired under the Plan. Classes I, II, III, IV and V are impaired under the Plan.

## ARTICLE VI.

## GENERAL PROVISIONS

A.     Payments under this Plan will be made by check, mailed postage prepaid, to the Claimant at the address listed on its proof of claim or, if no proof of claim has been filed, to the address listed on the schedule.

B.     Except as to the Claims of Taxing Authorities (including the IRS and the Minnesota Department of Revenue), Debtor reserves the right to designate the application of any payment on a Claim under this Plan.

C.     In the event a payment is returned to Debtor unclaimed, with no indication of claimant's forwarding address, Debtor will hold such payment for a period of 60 days from the date of return. If not claimed by Claimant by the end of that period, the payment shall become the property of the Debtor.

D.     Proofs of Claims or Interests not timely filed will not participate in distributions under this Plan and will be discharged under Bankruptcy Code § 1141(d) unless otherwise ordered by the Court.

E.     In the event this Plan is not confirmed under the Bankruptcy Code § 1129(a), the Debtor requests this Plan be confirmed under Bankruptcy Code § 1129(b).

12

F.     The articles and bylaws of the Debtor shall be amended as required by Bankruptcy Code § 1123(a)(6) and as may otherwise be required by this Plan.

G      Any creditor holding a deposit, including but not limited to utilities, shall return the full amount of the deposit, without the right to set off, as soon as practicable following confirmation of this Plan.

H.     As of the Confirmation Date, the Principals will continue to be the owners and members of the Board of Directors, subject to employment agreements acceptable to Fifth Third Bank.

I.     Contingent unliquidated Claims, including any guarantees of the Debtor, will be paid to the extent and manner agreed upon by the Debtor and the affected parties as approved by the Court, or as liquidated by the Court after hearing, as a general unsecured Claim under Class V.

J.     Any funds or benefits received by the Debtor by virtue of any adversary proceeding, claim, preference action, or any other legal right assertable by the Debtor under the Bankruptcy Code, or other law, shall remain the property of the Debtor, and may be used by the Debtor for its operations or to fund the Plan.

K.     If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan shall occur on the next succeeding Business Day.

## ARTICLE VII.

## MEANS OF EXECUTION OF PLAN AND FEASIBILITY

A.     Debt Restructuring.

Since the filing of its Chapter 11 petition, Debtor has been able to downsize its

operations, return unneeded or unnecessary equipment, eliminate or reduce expenses, and

renegotiate capital equipment purchases and operating leases. Debtor has negotiated a

restructuring of debts with its creditors.

Given the restructuring of its debt as set forth in the Plan, careful adherence and vigilance

to its expenses, the Debtor believes that it will be able to continue in business and pay its

creditors as set forth under its Plan.

B.     Plan Implementation.

The Debtor, after confirmation, will continue to manage its affairs and assets and will

disburse funds, serving as required as disbursing agent. The Debtor will remain responsible for

operating the business, paying its expenses and making distributions to creditors as set forth in

the Plan. The Debtor will provide or pay out of operating funds for all of the Debtor's

administrative expenses and business debts in the ordinary course of business.

Attached to Debtor's Disclosure Statement and marked as Exhibit A are projections

prepared by the Debtor's management. If Debtor's Plan is confirmed, Debtor is confident of its

ability to meet or exceed these projections and perform as set forth under the Plan.

The combination of building cash reserves during the case, the reduction and

restructuring of debt, return of equipment, and downsizing operations all enhance the feasibility

of the plan of reorganization and its likelihood of success.

# ARTICLE VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND ADMINISTRATIVE CLAIMS

Attached to the Plan and marked as Exhibit B is a list of the executory contracts and leases to which the Debtor is a party. As to each such contract or lease, the exhibit indicates whether Debtor has assumed the lease, entered into a new or amended replacement lease, or has or intends to reject or assume the lease or contract pursuant to this Plan. If any executory contracts or leases are not listed on Exhibit B, said lease or contract shall be deemed rejected, if not previously rejected, as of the Confirmation Date.

Unless otherwise ordered by the Court, a party to a rejected lease under the Plan shall have 30 days following the Confirmation Date to file a proof of claim for any damages incurred because of the rejection, if any. The Debtor shall, thereafter, have 15 days to file an objection to any such proofs of claim.

Unless otherwise ordered by the Court, any party holding an Administrative Claim, which has received a copy of this Plan, shall have 30 days following the confirmation date to file a request for payment of administrative expenses pursuant to the applicable provisions of the Bankruptcy Code and Rules. Failure to file such a request in a timely manner shall be deemed a waiver of the claim and the Debtor shall not be obligated to pay such claim.

# ARTICLE IX.

## ALTERNATIVES TO THE PLAN OF REORGANIZATION

Debtor believes strongly that acceptance of the Plan is in the best interest of its creditors. Based upon the financial projections discussed above, Debtor believes it can offer more to unsecured claimants than under a liquidation scenario, in which the Debtor's assets are returned to the primary secured creditors, and other priority claimants. If liquidation were to occur, only

secured claimants would receive anything.  Liquidation of the Debtor is evaluated on Exhibit C to the Disclosure Statement.

## ARTICLE X.

## MODIFICATION OF THE PLAN

The Debtor hereby reserves the right to amend or modify the Plan in the manner provided for under 11 U.S.C. § 1127 or § 1129(a) or (b), at any time prior to confirmation, or if allowed by the Court, at or after confirmation.  Debtor reserves the right to amend the Plan or remedy any defect or omission, or reconcile any inconsistencies of the Plan, or the order of confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan, or insure confirmation.

## ARTICLE XI.

## CONTINUING JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction over the Debtor's property, after confirmation of the Plan, for the purpose of enforcing the provisions of the Plan, including without limitation, the determination of the amount of Allowed Claims, the hearing of objections, if any, to Claims, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings, including but not limited to any preference actions, actions to subordinate Claims under § 510, to conduct any actions which may be properly removed to the Bankruptcy Court, and for other proper purposes related to this Plan.

## ARTICLE XII.

## CONTESTED CLAIMS

The Debtor, or any party in interest, has the right to object to Claims or Interests filed within the bankruptcy proceeding within 30 days of the effective date, or such other time as the

Court may direct.  The figures, valuations, or numbers given for Claims in this Plan and the accompanying Disclosure Statement are approximations.  The Debtor will examine all Claims and file any objections to such Claims as are appropriate.  Any such Claims for which an objection has been filed or with respect to which a determination of value must be made, shall be paid when, and to the extent allowed or determined by the Court, or as otherwise agreed to by the Debtor and such claimant, and approved by the Court.

## ARTICLE XIII.

## RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS

a)      <u>General Reservation</u>. Debtor reserves all of its rights, at law or in equity, not otherwise specifically modified by this Plan, to commence adversary proceedings, or take any other legal action allowed by the Bankruptcy Code, or other applicable law and use the proceeds thereof to fund operations or this Plan, except as set forth in paragraph b), below.

b)      <u>Avoidance Actions</u>.   Debtor is in the process of investigating its rights to recovery, if any, under the Bankruptcy Code, including claims under Chapter 5 of the Bankruptcy Code for Avoidance Actions.  Debtor reserves the right to commence adversary proceedings, object to claims, or take any other legal action allowed by the Bankruptcy Code, or other applicable law, and use all funds recovered from such proceedings to fund the Plan and for operations except Avoidance Actions, which Net Proceeds, if any, will be paid to the unsecured creditors as set forth under Class V.

## ARTICLE XIV.

## DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION

Confirmation of this Plan shall constitute a complete waiver and release and satisfaction of all Claims of all creditors and shareholders against the debtor, to the full extent allowed under

bankruptcy law. This discharge and release shall include any purported liens, encumbrances, or security interests claimed by a Claimant or any other entity against property of the debtor, or property dealt with by the Plan, except such liens as are expressly stated to survive confirmation. On the Effective Date, debtor shall be restored to its full ownership and dominion over all property and assets owned by it, which property shall be properly dealt with by the Plan, pursuant to Bankruptcy Code § 1141(c).

**ARTICLE XV.**

**MISCELLANEOUS PROVISIONS**

The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

The rules of construction used in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

Except to the extent that the Bankruptcy Code or other Federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, construed and enforced in accordance with, the internal laws of the State of Minnesota.

The rights, duties and obligations of any person or entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person or entity.

SYNERGY GRAPHICS, INC.

Dated: August 20, 2009      By: */s/ James Hannon* _____

                                    Its: Chief Restructuring Officer

1251594.1

**EXHIBIT A**

**FIFTH THIRD DEBT STRUCTURE**

1. <u>Committed Revolving Working Capital Line</u>

   - Term – 2 years

   - Maximum borrowing - $4.2 million

   - Interest Rate – prime plus two

   - Borrowing rates

     o 85% of eligible accounts receivable

     o 50% of eligible inventory

2. <u>Discretionary Working Capital Line</u>

   - Term – 1 year

   - Maximum borrowing - $1.2 million

   - Interest rate – prime plus two

3. <u>Term Loan A</u>

   - Term – 2 years

   - Beginning principal - $770,000

   - Interest rate – 5%, subject to change by Fifth Third at the end of the first year

   - Level monthly principal/interest payment based on a 7 year amortization

4. <u>Term Loan B</u>

   - Term – 2 years

   - Beginning principal - $776,600

   - Interest rate – 5%, subject to change by Fifth Third at the end of the first year

   - Level monthly principal/interest payment based on a 7 year amortization

5. Term Loan C

- Term – 2 years

- Beginning principal - $353,500

- Interest note – 5%, subject to change by Fifth Third at the end of the first year

- Level monthly principal/interest payment based on a 7 year amortization

6. Term Loan D

- Term – 10 years

- Beginning principal - $4.0 million

- Interest rate – 2.5%

- Monthly interest payments

- Principal due at end of term

- Deferred financing fee of 50% of Synergy net income before deferred financing fee and taxes due 120 days after year-end

7. Key Terms and Conditions

- Financial covenants to be discussed and to be established based on Debtor's financial projections

- An initial advance will be made on the Committed Working Capital Line in the approximate amount of $1,800,000, which advance will be used to refinance the Debtor's existing revolving loan obligations to Fifth Third. The proceeds of any subsequent advances under the Committed or Discretionary Working Capital lines will be used by the Debtor to finance its working capital needs in the ordinary course of business. The proceeds of Term Loan A will refinance Fifth Third's existing "Term Loan A" to the Debtor. The proceeds of Term Loan B and Term Loan C will refinance Fifth Third's existing Term Loan B-1 and Term Loan C to the Debtor. Term Loan D will refinance a portion of the Fifth Third's existing revolving loans to the Debtor.

- Customary covenants, representations and warranties and conditions and events of default for all loans

- Employment Agreements (including non-competition agreements) with key employees (including Don Dale and Mike O'Meara) required

- Intercreditor agreement between Fifth Third and the SBA will be required

- Fifth Third will maintain cash dominion

- All loans secured by all tangible and intangible assets of Synergy Graphics, Inc.

- All loans personally guaranteed by Don Dale, Mike O'Meara and Synergy Property, LLC

The Term Sheet and the description of the Fifth Third Bank debt facilities contained in the Disclosure Statement to which this Term Sheet is attached (a) are intended as outlines only and do not purport to summarize all of the terms, conditions, representations, warranties and other provisions which will be contained in definitive documentation and (b) are not intended to be legally binding obligations on Fifth Third Bank and do not constitute a commitment by Fifth Third Bank to lend or to enter into any transactions contemplated hereby or thereby.

1251594.1

# EXHIBIT B

## EXECUTORY CONTRACTS

| PARTY | TYPE OF CONTRACT | ASSUME/ REJECT |
|---|---|---|
| Synergy Graphics Property<br>14505 – 27th Avenue North<br>Plymouth, MN 55447 | Real estate lease on Plymouth plant | Assumed*<br>(as amended) |
| Keller 1 LLC<br>1257 – 2nd Street North<br>Sauk Rapids, MN 56379 | Real estate leases for St. Cloud office space | Assumed*<br>(as amended) |
| EKCC PO<br>PO Box 31001-0269<br>Pasadena, CA 91110-0269 | Nexpress Digimater E150, Serial # E7E02021 – Plymouth plant | Reject |
| Pitney Bowes<br>PO Box 856042<br>Louisville, KY 40285 | Postage meter, Acct. # 5087896 | Assume |
| Buerkle Acura<br>7926 Brooklyn Blvd.<br>Brooklyn Park, MN 55445 | Acura car lease:  VIN JH4K826659C000970 | Assume |
| Mercedes<br>PO Box 9001680<br>Louisville, KY 40290-1680 | Mercedes car lease VIN 4JGBF71E78A323022 | Assume |
| Toyota Financial Services<br>PO Box 4102<br>Carol Stream, IL 60197-4102 | Toyota auto lease – VIN 5TBDT48116S531493 | Expired**<br>(reject) |
| Land Rover Capital Group<br>PO Box 542000<br>Omaha, NE 68154-8000 | Land Rover auto lease – VIN SALMF15446A228810 | Expired**<br>(reject) |

| | | |
|---|---|---|
| Lexus Financial Services<br>PO Box 4102<br>Carol Stream, IL 60197-4102 | Lexus auto lease – VIN<br>JTJBT20X060104826 | Expired**<br>(reject) |
| GE Capital<br>PO Box 31001-0271<br>Pasadena, CA 9110-0271 | Copier equipment, account #<br>7502522-001 | Reject*** |

    * Leases amended to give Debtor right to terminate on shortened notice.
   ** Lease expired and autos have been (or are in the process of being) returned.
*** Equipment held by Synergy Web Graphics, Inc., and was never equipment of the Debtor

1251594.1

## SCHEDULE A

## SBA Loan A Collateral

| Equipment | Serial Number |
|---|---|
| Komori 6 color 40" printing press | 560 |
| Brausse Die Cutter | 95626 |
| Muller-Martini 10 Clamp Roto Binder RB with 27 Model 201 Pockets | 923163 |
| Wohlenberg DM 3 Knife Trimmer | S13711 |
| Aster Automatic Saddler Sewer | 13555/20155 |
| Headop/Smyth Saddle Sewer | 10089 |
| Headop/Smyth Saddle Sewer | 10090 |
| Headop/Smyth Saddle Sewer | 10091 |
| Dexter Lawson Super Duty Paper Drill model B3 | 516839 |

1251594.1

**SBA Loan B Collateral**

| Equipment | Serial Number |
|---|---|
| Contamination Control | N/A |
| 2 Caterpillar lifts trucks | 8JC02060<br>8JC02301 |
| GPI M80STD Baler | 60988STD |
| Graco Paint pumps | N/A |
| Zirkon | SSDW6611 48011 |
| Didde Comperfector | 346-0009 |
| 3M-Matic Case Sealer | 12992 |
| Label-Aire 2111M | 6143, 19310; 6122-98908 |
| Sullair Air compressor | 003-74153 |
| MBO B-123 folder | L 12/18 |
| United Graphics filtration system | N/A |
| Stretch Wrap Machine | N/A |
| Cheshire labeler #013110001WD | 002870001WD |
| MBO B-26-S-C sheet folder | T04/72 |
| Polar 115 ED cutter #7131713 | |
| Formost FW-250 Wrapping Line | N/A |
| Palamides BA70 banding machine | 1057 |
| Signode LB 2000 Strappers | 1108, 2987, 1250, 2643,<br>2642, 2644, 2129 |
| Polar 115 cutter #7431698 | 7431698 |
| Pre Press equipment | N/A |

1251594.1