UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

In re:                                      Case No. 08-45828

Synergy Graphics, Inc.,                     Chapter 11

                        Debtor.

------------------------------------------------------------

**SECOND AMENDED
DISCLOSURE STATEMENT
OF
SYNERGY GRAPHICS, INC.,
A MINNESOTA CORPORATION
August 20, 2009**

Thomas J. Flynn (30570)
LARKIN HOFFMAN DALY & LINDGREN Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Bloomington, Minnesota 55431
952-835-3800

Attorneys for Synergy Graphics, Inc.

# TABLE CONTENTS

ARTICLE

I.      INTRODUCTION...........................................................................................................1
        A.      Background ....................................................................................................1
        B.      Confirmation Hearing and Voting Procedures................................................2
        C.      Tax Consequences .........................................................................................3
        D.      Creditors Committee ......................................................................................3

II.     DEFINITIONS .............................................................................................................4

III.    OWNERSHIP AND BUSINESS HISTORY OF THE DEBTOR ...................................6

IV.     EVENTS LEADING TO REORGANIZATION .............................................................7
        A.      Acquisition of the Assets of a Shut-down Company .......................................7
        B.      Lack of Management Focus on Synergy Graphics ..........................................8
        C.      Downturn in Commercial Printing Industry ...................................................9
        D.      Decision to File .............................................................................................9

V.      OPERATIONS DURING CHAPTER 11 .....................................................................10
        A.      Cash Collateral ...........................................................................................10
        B.      Management ................................................................................................11

VI.     STEPS TAKEN BY DEBTOR TO IMPROVE OPERATIONS ...................................11
        A.      Appointment of Section 128 Receiver .........................................................11
        B.      Revenue and Profit Maintenance .................................................................12
        C.      Negotiation of Fifth Third Secured Debt ......................................................12
        D.      Reporting Improvements ..............................................................................12
        E.      Capital Addition – Expense Reduction .........................................................12

VII.    RESERVATION OF ALL RIGHTS, CLAIMS AND ACTION .....................................13
        A.      General Reservation.....................................................................................13
        B.      Avoidance Actions.......................................................................................13

VIII.   DESCRIPTION OF THE PLAN .................................................................................14
        A.      Summary of the Plan ...................................................................................14
        B.      Classification and Treatment of Claims and Interests ...................................14
        C.      Classified Claims and Interests....................................................................16

IX.     MEANS OF EXECUTION OF THE PLAN .................................................................24
        A.      Plan Implementation ...................................................................................24

X.      ALTERNATIVES TO THE PLAN OF REORGANIZATION .....................................24

XI.     MANAGEMENT FOLLOWING CONFIRMATION...................................................25

XII.    MODIFICATION OF THE PLAN ..............................................................................26

XIII    RETIREMENT BENEFITS TO EMPLOYEES ...........................................................26

XIV.    CONCLUSION...........................................................................................................26

# I.

## INTRODUCTION

A.    <u>Background</u>

Synergy Graphics, Inc., a Minnesota corporation ("Debtor" or "Company" or "Synergy Graphics"), filed a petition for reorganization ("Petition") under Chapter 11 of the U.S. Bankruptcy Code (the "Code") on November 7, 2008. The Debtor has operated its business as Debtor in possession under Section 1107 of the Code. The Debtor is now seeking confirmation of its plan of reorganization (the "Plan") from the Court. A copy of the Plan accompanies this disclosure statement. Debtor provides this disclosure statement pursuant to Section 1125 of the Code to all of its known holders of claims and interests in order to provide adequate information about the Debtor and the Plan so that they can make an informed judgment about the Plan's merits and the decision to vote for acceptance or rejection of the Plan.

Debtor requests that its creditors vote to accept the Plan. The Plan is premised upon Debtor's belief that unsecured creditors will receive more under the Plan, than under a forced liquidation of the Debtor. The Debtor anticipates paying approximately 3% of all unsecured claims, excluding Fifth Third Bank's unsecured claim, over time. Under liquidation, unsecured creditors will receive nothing.

THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT IS SUPPLIED BY DEBTOR AND NOT BY ANY OTHER PARTY. DEBTOR AUTHORIZES NO REPRESENTATIONS, PARTICULARLY AS TO FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY, OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE, OR REJECTION OF THIS PLAN, WHICH ARE OTHER THAN

AS CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION TO VOTE FOR OR AGAINST THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FORMAL APPRAISALS HAVE NOT BEEN OBTAINED. ALL STATEMENTS CONCERNING FINANCIAL DATA ARE MADE IN GOOD FAITH AND ARE INTENDED TO BE AS COMPLETE AND AS ACCURATE AS POSSIBLE WITHIN THESE LIMITATIONS. THERE IS NO ASSURANCE THAT THE FIGURES SHOWN IN THE PROJECTIONS WILL BE ACHIEVED. DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. NEITHER DEBTOR NOR ITS ATTORNEYS, LARKIN HOFFMAN DALY & LINDGREN LTD., HAVE ANY ACTUAL KNOWLEDGE OF ANY INACCURACIES.

B.    Confirmation Hearing and Voting Procedures

The court has, in the order accompanying this disclosure statement, set a time and place for a hearing on the confirmation of the Plan. Creditors and interest holders may vote for or against the Plan by completing, dating, and signing the ballot accompanying this disclosure statement and by mailing or otherwise delivering the ballot to the Clerk of Bankruptcy Court.

Class I, Class II, Class III, Class IV, and Class V claims are impaired under the Plan, and are entitled to vote on the Plan. Only creditors who vote are counted when determining whether the Plan is accepted or rejected. A class of claims has accepted a plan if such it has been accepted by creditors who hold at least two-thirds in amount and more than one-half in number of the allowed claims of the class.

If an impaired class rejects the Plan, the Debtor requests that the Court nonetheless confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code. Section 1129(b) provides that the Court shall confirm the Plan, despite the rejection of the Plan by an impaired class, if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

YOUR BALLOT MUST BE RECEIVED BY THE CLERK OF BANKRUPTCY COURT BY THE TIME PROVIDED FOR IN THE COURT'S ORDER FOR IT TO BE COUNTED.

C.    Tax Consequences

No information is set forth in this disclosure statement with respect to the tax consequences, if any, of the Plan, upon any creditor or stockholder of the Company. You are urged to consult with a tax advisor to review such matters.

D.    Creditors Committee

Pursuant to the Bankruptcy Code and Rules, the U. S. Trustee's office has appointed the following creditors to the Creditors Committee in this case:

(1)    Wilcox Paper LLC
       c/o Geoffrey Miller
       11100 Jefferson Highway N
       Champlin, MN 55316

(2)    Anchor Paper Company
       c/o Jessica Kiewel
       480 Broadway Street
       St. Paul, MN 55101

(3)    Mallard Ink Company
       c/o Gary Lee
       2800 Anthony Lane S
       St. Anthony, MN 55418

(4)    Mackay Mitchell Envelope Company
c/o Susan Rausch
2100 Elm Street SE
Minneapolis, MN 55114

(5)    Northland Paper Reclamation & Resources Inc.
c/o Donald A. Tyler
17203 Weaver Lake Drive
Maple Grove, MN 55311

The attorney for the Creditors Committee is Henry T. Wang of the law firm of Gray Plant Mooty Mooty & Bennett, P.A., 500 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402-3796.

## II.

## DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings hereinafter set forth. Any terms contained in the Plan that are not specifically defined shall have the meaning provided for in the Bankruptcy Code, unless the context otherwise requires. To the extent any term defined herein conflicts with the definition in the Bankruptcy Code, the Bankruptcy Code definition will prevail.

"Allowed Amount", "Allowed Claim" or "Allowed Interest" means a claim or interest to the extent that:

(a)    a proof of such claim or interest has been

    (i)    timely filed,

    (ii)    deemed filed pursuant to Bankruptcy Code § 1111(a),

    (iii)    late filed with leave of the court after notice and opportunity for hearing given to counsel for the debtor and counsel for the committee of unsecured creditors; and

(b)    (i)    that is not a contested claim, or

    (ii)    that is allowed (and only to the extent allowed) by a final order.

4

"Avoidance Actions" means claims made under 11 U.S.C. §§ 510, 542, 544, 545, 547, 548, 549, 500 and 553.

A claim asserted by any professional seeking compensation in connection with this case is an allowed claim only to the extent that the claim is allowed by order of the court after notice and hearing as provided in the Bankruptcy Code.

"Bankruptcy Court" or "Court" means this court, a unit of the United States Bankruptcy Court for the District of Minnesota, or any other court having competent jurisdiction to enter an order confirming the Plan.

"Company" or "Debtor" means Synergy Graphics, Inc.

"Confirmation Date" means the date of entry of an order confirming the debtor's Plan.

"Effective Date" means the eleventh business day following the filing date of the final order confirming this Plan.

"Interest" means the equity interest of any shareholder in the debtor.

"Net Proceeds" means the total proceeds received from recoveries under Avoidance Actions, less reasonable costs, expenses and attorneys' fees.

"Plan" means this Chapter 11 plan of reorganization and any amendments, or modifications thereto.

"Pro Rata Share" means, as to a claimant, the amount determined by multiplying the total amount of debtor's payment to a particular class by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total amount of all allowed claims in that class.

# III.

## OWNERSHIP AND BUSINESS HISTORY OF THE DEBTOR

Synergy Graphics, Inc. is a privately held Minnesota corporation, with offices at 14505 27th Avenue North, Plymouth, Minnesota.

Synergy Graphics was established in 1996 by its two primary principals Don Dale and Mike O'Meara. These two professionals have been involved in direct sales, customer development, market development and sales and marketing management in the printing industry since 1983 and 1985 respectively. Don Dale and Mike O'Meara each own 46% of the Synergy Graphics, Inc. stock; Robert Schafer and Jim Scalise own 5% and 3% respectively of the Synergy Graphics Inc. stock (each shareholder collectively the "Synergy Principals").

The Synergy Principals recognized that the market was expanding beyond the traditional "ink on paper" services provided by general commercial printers. Their objective was to build an organization that could provide expanded and integrated services including data asset management, unique packaging, advertising and marketing products, direct mail, fulfillment, point of purchase products and traditional commercial marketing products including high quality multi-color brochures and catalogues.

Synergy Graphics also developed capabilities to service government based work including ballot printing, ballot programming and non-election printed materials to various state and local government entities.

Synergy Graphics leases a 110,000 square foot facility in Plymouth, Minnesota. The building is leased from an LLC owned by the Synergy Principals in the same proportion as their ownership in Synergy Graphics. This facility and related equipment expansion was made in June 2006. It utilizes state of the art equipment to service the diverse needs of local, regional and

national clients.  These needs are met by a talented mix of graphic prepress, press, post-press, sales, service and marketing professionals.

The array of high quality services and products that Synergy Graphics currently provides includes:

- Data Asset Management

- Specialty Packaging

- Point of Purchase Advertising

- Marketing Collateral

- Catalogues, Large and Small

- Direct Mail

- Fulfillment

- Ballot Layout and Printing

- Ballot Programming

- Ballot Distribution

## IV.

## EVENTS LEADING TO REORGANIZATION

A.  <u>Acquisition of the Assets of a Shut-down Company</u>

In January of 2007, the Synergy Principals were approached to look at a business opportunity, Sunny Industries, a recently shutdown multi-web, 375,000 square foot operation servicing the newspaper insert market ("Sunny").  Sunny, located outside Madison, Wisconsin, had been shutdown in December of 2006 and was in a section 128 receivership and auction.  Due diligence was highly compressed due to the February 2007 auction time frame.  Supported by Fifth Third Bank secured financing, the Synergy Principals purchased the Sunny assets in

February of 2007 through a newly formed entity, Synergy Web Graphics, Inc. ("SWG"). SWG was a separately created entity set up to purchase the assets of Sunny. SWG was owned by the Synergy Principals in the same proportion as their ownership in Synergy Graphics. Under its financing agreement with Fifth Third Bank, assets of both SWG and Synergy Graphics were cross-collateralized to secure the separate secured bank debt of each company.

Due to a "perfect storm" of events, including the following, the SWG venture was an operational and financial failure.

- Inadequate due diligence

- Key Sunny personnel did not return

- Key Sunny customers did not return

- Newspaper industry advertising dropped precipitously

- Inadequate oversight and internal reports by Synergy Graphics financial personnel

- Inadequate reporting systems

In July of 2008, Synergy Graphics withdrew from SWG and the operation was put into Section 128 receivership and the assets liquidated for the benefit of Fifth Third Bank, the secured lender. The losses incurred, due to the failed SWG acquisition, exceeded $14,000,000.

B.    Lack of Management Focus on Synergy Graphics

The acquisition of the Sunny assets by Synergy Web Graphics, Inc. and subsequent efforts to revive that operation required substantial time commitment by Synergy Graphics senior marketing, sales, production and financial executives. From February of 2007 through July of 2008, these executives devoted more than one-half of their time to Synergy Web Graphics, Inc. No senior managers were added by either Synergy Graphics or Synergy Web Graphics, Inc. after

the acquisition, thus focus and attention to the Synergy Graphics business was severely diminished.

The negative impacts on Synergy Graphics related to diminished focus by its senior executives included:

- Decrease in business development

- Decrease in sales volume

- Increase in operating costs due to lack of oversight

- Loss of control over financial reporting

- Operating losses

C.     Downturn in Commercial Printing Industry

The commercial printing industry started to decline in early 2008. Historically, the commercial printing industry starts to retract prior to a general economic downturn as companies decrease their marketing budgets in anticipation of a general economic downturn. The results are both a decrease in volume and a decrease in margin because printing companies with excess capacity compete for the decreased volume by lowering prices.

D.     Decision to File

The significant losses related to the factors discussed above resulted in Synergy Graphics not being able to make payments to trade creditors on purchases made prior to July 2008. In July 2008, Synergy Graphics began doing business with its major trade creditors on a cash basis and formed an informal general unsecured committee comprised of the top eleven general unsecured creditors to keep them informed.

In August of 2008, Synergy Graphics engaged an outside firm to assist in analyzing its core business and preparing projections to share with its secured and unsecured Lenders. This

analysis was completed in September of 2008 and Synergy Graphics' senior management concluded that it had a viable operating business if the capital structure could be restructured to eliminate the debt related to significant previously discussed losses.

In October of 2008, Synergy Graphics' executives and Fifth Third Bank loan officers had extensive discussions on the viability of the business and the bank financing required to maintain its viability. These discussions resulted in substantial agreement on a financing structure that could be implemented during a bankruptcy proceeding and a model that could be used to finance a successful reorganization. These pre-filing discussions and agreements were critical due to the significance of Fifth Third as both the primary source of cash during and after a bankruptcy proceeding and its position as the largest general unsecured creditor of the Debtor. Synergy Graphics was able to smoothly and seamlessly file for Chapter 11 protection in November of 2008 with support of Fifth Third Bank.

## V.

## OPERATIONS DURING CHAPTER 11

A.    Cash Collateral

Debtor initially operated in this Chapter 11 case pursuant to an interim order authorizing use of cash collateral, and a DIP loan. On December 5, 2008, the Debtor obtained a final order for use of cash collateral, and has operated the Company under the terms of that order and subsequent extension on February 5, 2009. Under the terms of those orders, those creditors having a lien in cash collateral have been granted a post-petition security interest and replacement lien in their collateral, including the accounts receivable of the Debtor, and the Debtor has been allowed to continue to use funds generated by business operations.

B.    Management

During the pendency of this case, the executive management team of Synergy Graphics has been James Hannon, Chief Restructuring Manager; Don Dale, Chief Executive Officer; Mike O'Meara, Executive Vice-President of Marketing and Sales; and Jack Granlund, Chief Financial Officer.

James Hannon has over 30 years of senior executive experience in the financial and general management areas. He has fifteen years of formal and informal restructuring experience in the printing industry. Don Dale and Mike O'Meara have over 25 years experience each in marketing, sales and executive management in the printing industry. Jack Granlund has over 30 years experience in senior executive financial management including 3 years in the printing industry.

## VI.

### STEPS TAKEN BY DEBTOR TO IMPROVE OPERATIONS

A.    Appointment of Section 128 Receiver

The most significant step taken by Synergy Graphics to improve its operation was senior management's decision on July 18, 2008 to have a Section 128 receiver appointed at Synergy Web Graphics, Inc. in Wisconsin. As previously discussed, the acquisition of the assets of the shut-down predecessor company in February of 2007 resulted in losses of approximately $14 million dollars and the commitment of at least 50% of the time of Synergy Graphics senior marketing, sales, production and management executives.

Upon appointment, the Section 128 receiver took full authority and responsibility for the management of the business and all decisions related to its future and negotiations with all creditors. In addition, there was no further responsibility for Synergy Graphics to continue to

fund the ongoing losses at Synergy Web Graphics. This action immediately stopped ongoing losses and allowed Synergy Graphics executive management team to focus exclusively on managing and improving Synergy Graphics.

B.    Revenue and Profit Maintenance

The refocused sales and marketing team were able to maintain the value added from sales from the previous year for the August 2008 through May 2009 time period and produce earnings before interest, taxes and depreciation of approximately $1,100,000 during that time period. During this period, the vast majority of Synergy Graphics competitors were experiencing revenue decreases of up to 35%.

C.    Negotiation of Fifth Third Secured Debt

Synergy Graphics and Fifth Third Bank loan officers were able to negotiate a post-reorganization debt structure that would provide Synergy Graphics the liquidity to operate and potentially grow its business.

D.    Reporting Improvements

Synergy Graphics financial personnel improved the information systems to provide timely and accurate information related to asset values and operating costs. These improvements are essential to providing Fifth Third Bank information to assess the operations of Synergy Graphics and the senior management team with information to more effectively operate the business.

E.    Capital Addition – Expense Reduction

Synergy Graphics was able to produce sufficient cash flow prior to filing to purchase a used six-color sheet-fed press on an expiring operating lease in August 2008. This piece of equipment provided the capacity to continue to serve current customers and reduced equipment lease expense by $240,000 annually.

# VII.

## RESERVATION OF ALL RIGHTS, CLAIMS AND ACTION

A.    <u>General Reservation</u>.

Debtor is in the process of investigating its rights to recovery, if any, under the Bankruptcy Code, including preference actions and the like. Debtor reserves the right to commence adversary proceedings, object to claims, or take any other legal action allowed by the Bankruptcy Code, or other applicable law, and use all funds recovered from such proceedings to fund the Plan and for operations, except as set forth in paragraph b), below.

B.    Avoidance Actions.

Debtor is in the process of investigating its rights to recovery, if any, under the Bankruptcy Code, including claims under 11 USC §§ 510, 542, 544, 545, 547, 548, 549, 500 and 553 (the "Avoidance Actions"). Debtor reserves the right to commence adversary proceedings, object to claims, or take any other legal action allowed by the Bankruptcy Code, or other applicable law, and use all funds recovered from such proceedings to fund the Plan and for operations except avoidance actions, which Net Proceeds, if any, will be paid to the unsecured creditors under Class V. Debtor estimates that the amount of such possible avoidance actions are, in the aggregate, approximately $25,000.00. This amount is subject to reduction from possible defenses of which the Debtor is currently unaware, and the reasonable costs and expenses of collection, including filing fees and reasonable attorneys' fees, etc. None of the proceeds from any Avoidance Actions will fund operations, but will be used to pay the unsecured creditors as set forth in Class V.

# VIII.

## DESCRIPTION OF THE PLAN

A.     Summary of the Plan

The Debtor, cognizant of the consequences to its creditors in the event a plan of reorganization is not confirmed, developed its plan to provide realistic and acceptable recoveries for each class of claims.  Debtor believes that creditors will receive more from the performance of the Plan than by liquidating the company.  Creditors holding allowed secured claims will receive the full amount of their allowed secured claims, with interest.  Creditors without security, in the approximate amount of $14,000,000, who would likely receive nothing from a liquidation of the company, have, under the Plan, a vested interest in the survival of the Debtor and may receive their pro rata portion of $350,000 over time.

Debtor believes that the Plan enables each class of claims to maximize its recovery and, at the same time, permits the Debtor to be reorganized and to continue in business.

The following description of the Plan is qualified by the terms of the Plan itself.  Creditors should read both the disclosure statement and the Plan carefully and seek competent advice for any questions they may have.

B.     Classification and Treatment of Claims and Interests

1.     Unclassified Claims

Unclassified claims include:

a.     Quarterly fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6).  As of the date hereof, Debtor is current with such fees.

b.     Post-petition claims, incurred in the ordinary course of Debtor's business other than those listed in paragraph (c) below.  Debtor is current with all such expenses as of the date hereof.

c.    Allowed administrative expense claims, except as otherwise classified herein, including:

    (1)    Allowed fees and expenses of counsel for the Debtor pursuant to 11 U.S.C. § 503(b). The Debtor's counsel estimates that attorneys' fees and expenses for the Debtor will be an additional $50,000.

    (2)    Allowed fees and expenses of accountants for the Debtor under 11 U.S.C. § 503(b). Debtor estimates the approved accountants will seek fees and expenses of $20,000.

d.    Administrative claims of taxing authorities for post-petition taxes. Debtor is current on all post-petition taxes.

<u>Treatment</u>:

The foregoing claims will be satisfied by payment in full on the effective date, unless otherwise agreed to by the particular claimant, to the extent not otherwise paid in the ordinary course of business as the same become due or as agreed upon by a particular claimant. Debtor will continue to pay all court fees and quarterly trustee fees, and all other trustee fees that come due until the Chapter 11 case is closed, converted or dismissed, as required by 28 U.S.C. § 1930, and subject to any amendments to the Bankruptcy Code made retroactively applicable to this Case. After confirmation, the Debtor agrees to submit quarterly operating reports to the U.S. Trustee, in the format proscribed by the Trustee, until the case is closed, dismissed or converted. Funds will be obtained from Debtor's cash reserves and working capital.

e.    Claims of taxing authorities for pre-petition taxes entitled to priority by reason of 11 U.S.C. § 507(a)(8). Debtor is current on and has no liability to taxing authorities pre-petition.

<u>Treatment</u>:

The foregoing claims, to the extent they exist and are allowed, will be satisfied by payment in full, in equal monthly installments, over a period of 48 months from the date of the filing of the petition, with interest as required by applicable state or federal law. That portion of

any tax due which is a penalty, or non-priority tax, will be treated as a general unsecured claim under Class V, below.

C.    Classified Claims and Interests

    1.    Class I:  Secured Claim of Fifth Third Bank ("Fifth Third").

This class consists of the secured claim of Fifth Third in the total amount of approximately $14,200,000 (the "Fifth Third Loans"), under the terms of (i) revolving and term loan agreement, notes, security agreements, guaranties, DIP loan facility and related documents between Fifth Third and Synergy Graphics, Inc.,  and Synergy Graphics Property, LLC (the "Fifth Third SGI Loan Documents") and (ii) revolving and term loan agreements, notes and security agreements and related documents between Fifth Third and Synergy Web Graphics, Inc. (the "Fifth Third SWG Loan Documents"), which loans were guaranteed by the Debtor and cross-collateralized with the Debtor's assets (collectively, the "Fifth Third Loan Documents"). The Fifth Third Loans are fully secured by a blanket first-priority lien (subject to the relative priorities of the SBA in the Subject Equipment, as described in Class II below) in all pre-petition and post-petition assets of the Debtor, including without limitation, the Debtor's accounts receivable, inventory, equipment, and general intangibles, 50 percent of all avoidance actions under Chapter 5 of the Bankruptcy Code and all other tangible and intangible assets (the "Fifth Third Collateral").  The allowed secured claim in Class I, in the amount of $8,200,000 (the "Allowed Fifth Third Class I Secured Claim") shall be paid as follows:

Treatment:

The full amount of the Allowed Fifth Third Class  I Secured Claim shall be paid according to the terms of an amended and restated loan agreement, notes and security agreements and related agreements in form and substance acceptable to Fifth Third and Debtor ("New SGI

Debt"), of which the material business terms are set out on Exhibit A attached to this Disclosure Statement and are summarized as follows:

(i)   a revolving credit line of up to $4.2 million subject to a borrowing base calculated based upon percentage of eligible accounts receivable and inventory bearing interest at the prime rate announced from time to time by Fifth Third plus two, which revolving credit line terminates two years after the Plan of Reorganization is confirmed, and

(ii)   a discretionary line of credit up to $1.2 million that Fifth Third, in its sole discretion, concludes is appropriate to fund additional working capital needs bearing interest at prime announced from time to time by Fifth Third plus two, which facility terminates one year after the Plan of Reorganization is approved, and

(iii)   Term loans (A, B and C), due in two years, in the aggregate amount of $1.9 million that bear interest at a fixed rate equal to 5% (subject to change in rate by Fifth Third one year after the Plan of Reorganization is approved), maturing in two years after the Plan of Reorganization is approved with monthly level principal and interest payments based on an assumed term of seven years except that these notes are subject to acceleration if the revolving committed line is defaulted or paid off.  The aggregate monthly payment is estimated to be approximately $26,855, and

(iv)   a term loan in the approximate amount of $4.0 million that bears interest payable monthly at 2.5% that is payable in full ten years after the Plan of Reorganization is approved except that this note is subject to acceleration if the revolving committed line is defaulted.  The monthly payment is estimated to be approximately $8,333.  This term note will have deferred financing fee equal to 50% of net income before taxes and the deferred financing fee will be payable within 120 days after each fiscal year end.  Fifth Third will retain its lien on all of the

Fifth Third Collateral until the entire amount of Fifth Third's New SGI debt is paid in full and all commitments of Fifth Third to extend financial accommodations to SGI have been terminated.[1]

The remaining amount of Fifth Third's debt related to the Fifth Third SWG Loan Documents, in the approximate amount of $6.0 million, will be treated as a general unsecured claim under Class V, below. Fifth Third will, upon confirmation of a Plan of Reorganization proposed by the debtor, with treatment of Fifth Third's claim as set forth herein, agree to waive its right to receive a portion of amounts to be paid to general unsecured creditors, as set forth in Class V. The Debtor also believes that Fifth Third will vote its general unsecured claim to approve the plan.

 2. Class II: Secured Claim of the Small Business Administration ("SBA").

This Class consists of the secured claim of the SBA under two separate Loans:

(i) The SBA Loan A. Loan A consists of a Section CDC/504 SBA Loan PCL 930-842-400 payable to Twin Cities Metro Certified Development Company (the administrative agent for the SBA), dated November 23, 2005 in the original amount of $482,000 (the "SBA Loan A") including a note, loan agreement guaranties and security agreement (the "SBA Loan A Loan Documents"). The SBA Loan A is secured by a second position security interest in specific equipment listed on Schedule A (the "SBA Loan A Collateral"). Fifth Third Bank holds the first secured position in the equipment on Schedule A as security for its allowed secured claim of $353,550. As of the filing date, the outstanding obligation of the Debtor for SBA Loan A is

---

[1] On or before 10 days prior to the last day for filing objections to the confirmation of the Plan, the Debtor will file with the Court a Supplement to the Plan containing forms of the definitive loan documentation governing the New SGI Debt, which documents may be redacted to exclude proprietary information. After such filing, copies of such forms may be obtained by request to the Debtor's counsel.

approximately $369,569.  The Debtor believes the value of the collateral in Schedule A is approximately equal to Fifth Third Bank's first secured allowed claim of $353,550, and

(ii)  The SBA Loan B.  Loan B consists of a Section CDC/504 SBA Loan 2111256005 payable to Twin Cities Metro Certified Development Company, dated July 27, 2006  in the original amount of $926,000 (the "SBA Loan B") including a note, loan agreement guaranties and security agreement (the "SBA Loan B Documents").   The SBA Loan B is secured by a second position security interest in specific equipment listed on Schedule B (the "SBA Loan B Collateral").  Fifth Third Bank holds the first secured lien position in the equipment on Schedule B as security for its allowed secured claim of $776,600.  As of the filing date, the outstanding obligation of the Debtor for SBA Loan B is approximately $765,057.   The Debtor believes the total value of the collateral in Schedule B is approximately $1,101,600 which is $325,000 higher than Fifth third Bank's first secured allowed claim of $776,600 on such collateral.

Treatment:

The secured claim of the SBA for its two Loans shall be treated as follows:

(i)  The SBA Loan A.  SBA's security interest in the Loan A Collateral will be extinguished.  SBA shall have an allowed general unsecured claim for $369,569, the outstanding obligation of Debtor for Loan A.

(ii)  The SBA Loan B.  The total allowed secured claim of the SBA under SBA Loan B will be paid up to the value of the SBA Loan B Collateral, to the extent the value thereof is in excess of first position allowed secured claim of $776,600 of Fifth Third Bank.  Debtor estimates that the total value of the collateral on Schedule B is $1,101,600.  The allowed secured claim related to SBA Loan B is, therefore, $325,000.  Such amount shall be paid in fully amortized equal monthly installments at 5% for seven years commencing within 30 days after the effective

date of the Plan. The monthly payment is estimated to be approximately $4600. There shall be no penalty for pre-payment. The SBA will retain its second secured position in the SBA Loan B Collateral, until the full amount of the allowed secured claim of the SBA Loan B is paid in full. As described above, Fifth Third holds a first secured lien position on the SBA Loan B collateral until the full amount of the Fifth Third Term Loan A (as described in the Term Sheet) is paid in full. Except specifically as set forth herein, all other terms of the SBA Loan B Documents will remain in full force and effect. The remaining amount of the claim of the SBA related to SBA Loan B in the approximate amount of $440,057, shall be treated as general unsecured claim under Class V below.

3.    Class III:  Secured Claim of TCF Financial Corporation ("TCF").

This class consists of the secured claim of TCF arising out of a capital lease and related documents (the "TCF Loan Documents") in the approximate amount of $150,000. Such loan is secured by certain equipment held by the Debtor (the "TCF Collateral"). The parties have agreed the collateral has a value of $35,000.

Treatment:

Debtor intends to enter into a stipulation with TCF relating to the payment of adequate protection and claim treatment under a Plan of Reorganization. Pursuant to that expected agreement:

Of the total claim of approximately $150,000, the allowed secured claim shall be paid in the amount of $35,000 (less payments made pursuant to the stipulation, if any), which amount shall be paid in full, in fully amortized equal monthly installments at 6 percent for a period of 36 months beginning within 30 days after confirmation, and each month thereafter, until paid in full.

Monthly payments will be $1,065. The unsecured portion of TCF's claim in the amount of $115,000 shall be treated as an Allowed general unsecured Claim under Class V, below.

TCF shall retain a lien and security interest in the TCF Collateral, as set forth above, until the principal balance of this secured claim, along with all accruing interest, is paid in full. Except as otherwise provided herein, all other terms and conditions of the TCF Loan Documents (and stipulation, if any) shall remain in full force and effect.

        4.      <u>Class IV: Secured Claim of Key Equipment France, Inc. ("Key")</u>.

This class consists of the secured claim of Key arising out of a capital lease and related documents (the "Key Loan Documents") in the approximate amount of $112,000. Such loan is secured by certain equipment held by the Debtor (the "Key Collateral"). The Debtor believes that the collateral has a value of $30,000.

<u>Treatment</u>:

Of the total claim of approximately $112,000, the Allowed secured Claim shall be paid in the amount of $30,000, which amount shall be paid in full, in fully amortized equal monthly installments at 6 percent for a period of 36 months beginning within 30 days after confirmation, and each month thereafter, until paid in full. Monthly payments will be $1,015. The unsecured portion of Key's claim in the amount of $82,000 shall be treated as an allowed general unsecured claim under Class V, below.

Key shall retain a lien and security interest in the Key Collateral, as set forth above, until the principal balance of this secured claim, along with all accruing interest, is paid in full. Except as otherwise provided herein, all other terms and conditions of the Key Loan Documents (and stipulation, if any) shall remain in full force and effect.

5. <u>Class V: General Unsecured Claims.</u>

This class shall consist of allowed unsecured claims not entitled to priority and not treated in any other class in the Plan, including the unsecured portion of any secured classes claim, including the unsecured portion of Class I, Class II, Class III and Class IV claims. The allowed claims in Class V are in the approximate amount of $14,000,000 (including Fifth Third Bank's Class V claim of approximately $6,000,000). The holders of general unsecured claims shall be treated as follows:

<u>Treatment:</u>

(a)    <u>Payments.</u>  Except as stated in paragraph (b) below, the holder of a Class V allowed claim will be paid their pro rata share of the sum of $350,000. The payment of said sum will be made in four equal bi-annual installments beginning March 15, 2010 in the amount of $87,500; September 15, 2010 in the amount of $87,500; March 15, 2011 in the amount of $87,500 and September 15, 2011 in the amount of $87,500.

(b)    <u>Early Payment Election.</u>  Any holder of a Class V allowed claim may elect to take $250.00 payable on March 15, 2010 as full settlement of their allowed unsecured claim (individually, the "Early Payment Amount"; collectively, "Early Payment Sum"). Any Early Payment Sum will reduce the $350,000 total payment dollar for dollar beginning with the first payment due March 15, 2010 (the "Remaining Balance Due"). After any such reduction, the total Class V claim will be reduced by the sum of any allowed Class V claims electing the Early Payment Amount (the "Remaining Class V Claims"). Each holder of a general unsecured claim in the Remaining Class V Claims will receive their pro rata share of the Remaining Balance Due. Fifth Third Bank has agreed to waive its right to payments under parts (a) and (b) of this section

if: (i) the Debtor's Plan of Reorganization is confirmed, and (ii) the treatment given to Fifth Third Bank is as set forth under Class I, above.

(c)     Chapter 5 Claims.  In addition to the above payments, the Remaining Class V Claims shall receive their pro rata share of 50 % of the Net Proceeds of every fraudulent transfer or preference action brought under Chapter 5 of the Bankruptcy Code, with Fifth Third Bank receiving the other 50% of any such recoveries.  Net Proceeds are difficult to predict, but Debtor estimates such proceeds may total $25,000.

Such payments under (a), (b) and (c) (if any), above shall be in full satisfaction of each allowed general unsecured claim including Fifth Third Bank's allowed general unsecured claim.

6.     Class VI:  Equity Interests.

This class shall consist of the allowed equity or ownership interests of the Debtor.

Treatment:

Don Dale, Mike O'Meara, Robert Schafer and Jim Scalise shall remain as the 46%, 46%, 5% and 3% owners and shareholders, respectively, of the Debtor, unaffected under the Plan.

7.     Executory Contracts and Unexpired Leases

Attached to this Disclosure Statement as Exhibit D, and to the Plan as Exhibit B, is a list of executory contracts and leases to which the Debtor is a party.  As to each such contract or lease, the exhibit indicates whether Debtor has assumed the lease, will assume the lease or intends to reject or rescind the lease or contract.  Any executory contract not listed or scheduled is hereby deemed rejected.

There are no cure costs associated with the assumption of the listed executory contracts and leases.

# IX.

## MEANS OF EXECUTION OF THE PLAN

A.     Plan Implementation

Debtor's ability to consummate the Plan is subject to Debtor's entry into, and performance under, satisfactory exit financing. While Debtor anticipates that this will occur, the terms and a commitment to the same are not yet final.

The Debtor, after confirmation, will continue to manage its affairs and assets and will disburse funds, serving as required as disbursing agent. The Debtor will remain responsible for operating the business, paying its expenses and making distributions to creditors as set forth in the Plan. The Debtor will provide or pay out of operating funds for all of the Debtor's administrative expenses and business debts in the ordinary course of business.

Attached hereto and marked as Exhibit B are the cash receipts and disbursement summaries filed with the U.S. Trustee during the case, as well as projections prepared by the Debtor's management. If Debtor's Plan is confirmed, Debtor is confident of its ability to meet or exceed these projections and perform as set forth under the Plan.

The combination of building cash reserves during the case, the reduction and restructuring of debt, the elimination of staff, reduction or elimination of unnecessary equipment, downsizing operations, and the other steps described above, all enhance the feasibility of the Plan and its likelihood of success.

## X.

## ALTERNATIVES TO THE PLAN OF REORGANIZATION

Debtor believes strongly that acceptance of the Plan is in the best interest of its creditors. Based upon the financial projections discussed above, Debtor believes it can offer more to

unsecured claimants than under a liquidation scenario, in which the Debtor's assets are returned to the primary secured creditors, and other priority claimants. If liquidation were to occur, only secured claimants would receive anything. Liquidation of the Debtor is evaluated on Exhibit C.

**XI.**

**MANAGEMENT FOLLOWING CONFIRMATION**

The Synergy Principals will, upon the Plan's effective date, continue to own and run the Debtor and will be members of its board subject to employment contracts acceptable to Fifth Third Bank.

After confirmation of the Plan, Mr. Dale will be employed by the Debtor in the same capacity that he was employed prepetition and during the pendency of the case, and paid a salary commensurate with industry standards for an employee with his experience and abilities of approximately $411,000, according to an employment agreement to be entered into after confirmation.

After confirmation of the Plan, Mr. O'Meara will be employed by the Debtor in the same capacity that he was employed prepetition and during the pendency of the case, and paid a salary commensurate with industry standards for an employee with his experience and abilities of approximately $411,000, according to an employment agreement to be entered into after confirmation.

After confirmation of the Plan, Jack Granlund will be employed as Chief Financial Officer, the same capacity that he was employed prepetition and during the pendency of the case, and paid a salary substantially similar to his prepetition salary of approximately $312,000.

After confirmation of the Plan, Jim Hannon will be employed as General Manager, and paid a salary of $182,000.

## XII.

## MODIFICATION OF THE PLAN

The Debtor hereby reserves the right to amend or modify the Plan in the manner provided for under 11 U.S.C. § 1127 or § 1129(a) or (b), at any time prior to confirmation, or if allowed by the Court, at or after confirmation. Debtor reserves the right to amend the Plan or remedy any defect or omission, or reconcile any inconsistencies of the Plan, or the order of confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan, or ensure confirmation.

## XIII.

## RETIREMENT BENEFITS TO EMPLOYEES

After confirmation of the Plan, the Debtor's only obligation related to retirement benefits is a discretionary contribution to employees' 401(k) plans.

## XIV.

## CONCLUSION

As noted above, Debtor believes that acceptance of the Plan is in the best interest of all parties. Debtor requests that each holder of a claim or interest complete the ballot and accept the proposed plan.

Respectfully submitted,

SYNERGY GRAPHICS, INC.

Dated: August 20, 2009                    By: */s/ James Hannon*_____
                                                   Its:  Chief Restructuring Officer

Dated:  August 20, 2009

/s/ Thomas J. Flynn
Thomas J. Flynn (30570)
LARKIN HOFFMAN DALY & LINDGREN Ltd.
Attorneys for Debtor
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Bloomington, Minnesota  55431-1194
(952) 835-3800

1268288.1

<u>Fifth Third Debt Structure</u>

1. <u>Committed Revolving Working Capital Line</u>

   - Term – 2 years

   - Maximum borrowing - $4.2 million

   - Interest Rate – prime plus two

   - Borrowing rates

     o 85% of eligible accounts receivable

     o 50% of eligible inventory

2. <u>Discretionary Working Capital Line</u>

   - Term – 1 year

   - Maximum borrowing - $1.2 million

   - Interest rate – prime plus two

3. <u>Term Loan A</u>

   - Term – 2 years

   - Beginning principal - $770,000

   - Interest rate – 5%, subject to change by Fifth Third at the end of the first year

   - Level monthly principal/interest payment based on a 7 year amortization

4. <u>Term Loan B</u>

   - Term – 2 years

   - Beginning principal - $776,600

   - Interest rate – 5%, subject to change by Fifth Third at the end of the first year

   - Level monthly principal/interest payment based on a 7 year amortization

5. Term Loan C

- Term – 2 years

- Beginning principal - $353,500

- Interest note – 5%, subject to change by Fifth Third at the end of the first year

- Level monthly principal/interest payment based on a 7 year amortization

6. Term Loan D

- Term – 10 years

- Beginning principal - $4.0 million

- Interest rate – 2.5%

- Monthly interest payments

- Principal due at end of term

- Deferred financing fee of 50% of Synergy net income before deferred financing fee and taxes due 120 days after year-end

7. Key Terms and Conditions

- Financial covenants to be discussed and to be established based on Debtor's financial projections

- An initial advance will be made on the Committed Working Capital Line in the approximate amount of $1,800,000, which advance will be used to refinance the Debtor's existing revolving loan obligations to Fifth Third. The proceeds of any subsequent advances under the Committed or Discretionary Working Capital lines will be used by the Debtor to finance its working capital needs in the ordinary course of business. The proceeds of Term Loan A will refinance Fifth Third's existing "Term Loan A" to the Debtor. The proceeds of Term Loan B and Term Loan C will refinance Fifth Third's existing Term Loan B-1 and Term Loan C to the Debtor. Term Loan D will refinance a portion of the Fifth Third's existing revolving loans to the Debtor.

- Customary covenants, representations and warranties and conditions and events of default for all loans

- Employment Agreements (including non-competition agreements) with key employees (including Don Dale and Mike O'Meara) required

2

- Intercreditor agreement between Fifth Third and the SBA will be required

- Fifth Third will maintain cash dominion

- All loans secured by all tangible and intangible assets of Synergy Graphics, Inc.

- All loans personally guaranteed by Don Dale, Mike O'Meara and Synergy Property, LLC

The Term Sheet and the description of the Fifth Third Bank debt facilities contained in the Disclosure Statement to which this Term Sheet is attached (a) are intended as outlines only and do not purport to summarize all of the terms, conditions, representations, warranties and other provisions which will be contained in definitive documentation and (b) are not intended to be legally binding obligations on Fifth Third Bank and do not constitute a commitment by Fifth Third Bank to lend or to enter into any transactions contemplated hereby or thereby.

1268288.1

EXHIBIT B

<u>Cash Receipts and Disbursement Summaries, and
Cash Flow Projections</u>

**Synergy Graphics**
**Cash Flow Forecast**

| | Oct-09 | Nov-09 | Dec-09 | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 | FYE 12/10 | FYE 12/11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | 1,999,000 | 2,351,000 | 2,398,000 | 2,047,000 | 1,805,000 | 1,864,000 | 1,699,000 | 1,885,000 | 1,816,000 | 2,167,000 | 2,208,000 | 2,514,000 | 2,287,000 | 2,320,000 | 2,950,000 | 23,000,000 | 23,000,000 |
| Material Cost | 892,000 | 1,234,000 | 1,087,000 | 828,000 | 943,000 | 731,000 | 733,000 | 845,000 | 711,000 | 720,000 | 924,000 | 916,000 | 1,010,000 | 1,016,000 | 1,016,000 | 10,615,000 | 10,500,000 |
| Value Added | 1,107,000 | 1,117,000 | 1,339,000 | 1,219,000 | 952,000 | 1,185,000 | 916,000 | 824,000 | 974,000 | 896,000 | 1,243,000 | 1,292,000 | 1,504,000 | 1,048,000 | 1,304,000 | 13,346,000 | 12,500,000 |
| Production Expense | 646,100 | 647,400 | 817,300 | 647,800 | 589,100 | 611,600 | 555,200 | 537,500 | 589,400 | 529,500 | 655,300 | 650,100 | 598,500 | 640,600 | 598,400 | 7,156,100 | 7,000,000 |
| SG&A Expense | 383,000 | 993,300 | 371,200 | 337,000 | 344,000 | 397,000 | 378,700 | 350,700 | 359,400 | 362,200 | 373,100 | 388,100 | 596,500 | 372,300 | 355,500 | 4,350,500 | 4,400,000 |
| Operating Cash Flow | 117,900 | 108,400 | 310,400 | 235,000 | 26,900 | 184,300 | 117,800 | 184,200 | 73,300 | 3,900 | 240,500 | 253,200 | 457,000 | 77,200 | 298,900 | 1,808,000 | 1,100,000 |
| **Payments to Fifth Third** | | | | | | | | | | | | | | | | | |
| Working capital line | 0 | | | | | | | | | | | | | | | | |
| Term Debt | 0 | (11,000) | (11,000) | (11,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (102,000) | (102,000) |
| Add'l/new interest | 0 | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (35,200) | (422,400) | (422,400) |
| Total Fifth Third | 0 | (46,200) | (46,200) | (46,200) | (41,200) | (41,200) | (41,200) | (41,200) | (41,200) | (41,200) | (46,200) | (46,200) | (46,200) | (46,200) | (46,200) | (524,400) | (774,400) |
| **Payments to the SBA** | | | | | | | | | | | | | | | | | |
| Term debt | 0 | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (31,200) | (31,200) |
| Total SBA | 0 | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (31,200) | (31,200) |
| **Payments to General Unsecured Creditors** | | | | | | | | | | | | | | | | | |
| Semi-annual payment | | | | | | (87,500) | | | | | | (87,500) | | | | (175,000) | (175,000) |
| Total General Unsecured | 0 | 0 | 0 | 0 | 0 | (87,500) | 0 | 0 | 0 | 0 | 0 | (87,500) | 0 | 0 | 0 | (175,000) | (175,000) |
| **Other Payments** | | | | | | | | | | | | | | | | | |
| US Trustee | | | (13,000) | | | (13,000) | | | (13,000) | | | (13,000) | | | | (52,000) | (52,000) |
| TCF | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (1,100) | (13,200) | (13,200) |
| Key Leasing | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (12,000) | (12,000) |
| Total Other Payments | (2,100) | (2,100) | (15,100) | (2,100) | (2,100) | (15,100) | (2,100) | (2,100) | (15,100) | (2,100) | (2,100) | (15,100) | (2,100) | (2,100) | (2,100) | (77,200) | (77,200) |
| **Operating Cash Flow** | 117,900 | 75,000 | 232,600 | 232,600 | 302,400 | 185,400 | 156,000 | 59,300 | 150,700 | 123,400 | 178,400 | 51,200 | 66,000 | 359,100 | 285,400 | 435,100 | |
| Beginning Balance | 117,900 | 108,400 | 75,000 | 232,600 | 302,400 | 185,400 | 138,200 | 59,300 | 150,700 | 123,400 | 178,400 | 51,200 | 66,000 | 163,300 | 285,400 | 1,100,000 | |
| Monthly Operating Cash Flow | 0 | | 310,400 | 28,800 | 184,700 | (17,900) | 3,800 | (64,200) | 75,300 | (24,600) | 285,300 | 253,200 | 457,000 | 77,200 | 77,200 | 298,900 | 1,057,800 | |
| Monthly Plan Payments | (50,900) | (50,900) | (63,900) | (65,900) | (45,900) | (133,600) | (45,900) | (45,900) | (65,900) | (50,900) | (50,900) | (138,600) | (50,900) | (50,900) | (50,900) | (650,900) | |
| Repay Discretionary Line | (100,000) | (100,000) | (100,000) | (100,000) | (58,500) | 0 | (45,900) | 0 | (58,500) | 0 | (100,000) | (100,000) | (100,000) | (100,000) | (220,000) | | |
| Ending Cash Balance | 117,900 | 75,000 | 232,600 | 302,400 | 185,400 | 138,200 | 59,300 | 150,700 | 123,400 | 178,400 | 51,200 | 66,000 | 359,100 | 285,400 | 775,300 | | 775,300 |

SUMMARY OF FINANCIAL STATUS

Revised 1/15/09

MONTH ENDED:  NOVEMBER 2008          FILING DATE:   NOVEMBER 7, 2008

1.   Debtor in possession (or trustee) hereby submits this Summary of Financial Status.  Dollis reported in ($1)

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2.   Asset Structure | | | |
| a. Current Assets (Market Value) | 5,574,320 | 5,683,282 | |
| b. Total Assets (Market Value) | 9,680,713 | 10,049,273 | 10,175,732 |
| c. Current Liabilities | 14,706,117 | 14,968,262 | |
| d. Total Liabilities | 17,096,738 | 17,367,564 | 17,696,998 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3.   Statement of Cash Receipts & Disbursements for Month | | | |
| a. Total Receipts | 3,001,355 | N/A | 3,001,355 |
| b. Total Disbursements | 2,979,901 | N/A | 2,979,901 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | 21,454 | N/A | 21,454 |
| d. Cash Balance Beginning of Month | 0 | N/A | 0 |
| e. Cash Balance End of Month (c + d) | 21,454 | N/A | 21,454 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4.   Profit/(Loss) from the Statement of Operations | 105,241 | N/A | 105,241 |
| 5.   Account Receivables (Pre and Post Petition) | 4,221,222 | N/A | |
| 6.   Post-Petition Liabilities | 1,506,019 | N/A | |
| 7.   Past Due Post Petition Account Payables (Over 30 days) | 0 | N/A | |

At the end of this reporting month:

| | Yes | No |
|---|---|---|
| 8.   Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9.   Have any payments been made to professionals? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10.  If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11.  Have any payments been made to officers, insiders, shareholders, relatives? (If yes, attach listing including date of payment, amount, and reason for payment, and name of payee) | X | |
| 12.  Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13.  Are a plan and disclosure statement on file? | | X |
| 14.  Was there any post-petition borrowing during this reporting period? | X | |

15.   Check if paid: Post-petition taxes ___X___ ; U.S. Trustee Quarterly Fees _____ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___X___
      (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable
inquiry believe these documents are correct.

Date:  1/5/09                              Responsible Individual

### SUMMARY OF FINANCIAL STATUS

MONTH ENDED:  DECEMBER 2008                    FILING DATE:  NOVEMBER 7, 2008

1.  Debtor in possession (or trustee) hereby submits this Summary of Financial Status.  Dollis reported in ($1)

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2.  Asset Structure. | | | |
| a. Current Assets (Market Value) | 5,062,859 | 5,574,320 | |
| b. Total Assets (Market Value) | 9,048,379 | 9,680,713 | 10,175,732 |
| c. Current Liabilities | 14,019,695 | 14,706,117 | |
| d. Total Liabilities | 16,410,316 | 17,096,738 | 17,696,998 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3.  Statement of Cash Receipts & Disbursements for Month | | | |
| a. Total Receipts | 5,153,608 | 3,001,355 | 8,154,962 |
| b. Total Disbursements | 4,738,969 | 2,979,901 | 7,718,870 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | 414,639 | 21,454 | 436,092 |
| d. Cash Balance Beginning of Month | 21,454 | 0 | 0 |
| e. Cash Balance End of Month (c + d) | 436,092 | 21,454 | 436,092 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4.  Profit/(Loss) from the Statement of Operations | 54,088 | 105,241 | 159,329 |
| 5.  Account Receivables (Pre and Post Petition) | 4,221,222 | 3,424,845 | |
| 6.  Post-Petition Liabilities | 3,468,759 | 1,506,019 | |
| 7.  Past Due Post Petition Account Payables (Over 30 days) | 19,474 | 0 | |

At the end of this reporting month:

| | Yes | No |
|---|---|---|
| 8.  Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9.  Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount, and reason for payment, and name of payee) | X | |
| 12. Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. Are a plan and disclosure statement on file? | | X |
| 14. Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes ___X___ ; U.S. Trustee Quarterly Fees _____ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___X___
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable inquiry believe these documents are correct.

Date: ___1/5/09___                    _____  CFO
                                      Responsible Individual

### SUMMARY OF FINANCIAL STATUS

MONTH ENDED:  JANUARY 2009          FILING DATE:  NOVEMBER 7, 2008

1. Debtor in possession (or trustee) hereby submits this Summary of Financial Status. Dollis reported in ($1)

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2. Asset Structure | | | |
| a. Current Assets (Market Value) | 4,784,931 | 5,062,859 | |
| b. Total Assets (Market Value) | 8,798,966 | 9,048,379 | 10,175,732 |
| c. Current Liabilities | 13,751,744 | 14,019,695 | |
| d. Total Liabilities | 16,142,365 | 16,410,316 | 17,696,998 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3. Statement of Cash Receipts & Disbursements for Month | | | |
| a. Total Receipts | 3,871,684 | 5,153,608 | 12,026,646 |
| b. Total Disbursements | 4,299,543 | 4,738,969 | 12,018,413 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | (427,859) | 414,639 | 8,233 |
| d. Cash Balance Beginning of Month | 436,092 | 21,454 | 0 |
| e. Cash Balance End of Month (c + d) | 8,233 | 436,092 | 8,233 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4. Profit/(Loss) from the Statement of Operations | 18,535 | 54,088 | 177,864 |
| 5. Account Receivables (Pre and Post Petition) | 3,621,253 | 3,460,675 | |
| 6. Post-Petition Liabilities | 5,497,315 | 3,468,759 | |
| 7. Past Due Post-Petition Account Payables (Over 30 days) | 0 | 19,474 | |

| At the end of this reporting month: | Yes | No |
|---|---|---|
| 8. Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. Have any payments been made to professionals? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. Have any payments been made to officers, insiders, shareholders, relatives? (If yes, attach listing including date of payment, amount, and reason for payment, and name of payee) | X | |
| 12. Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. Are a plan and disclosure statement on file? | | X |
| 14. Was there any post-petition borrowing during this reporting period? | X | |
| 15. Check if paid: Post-petition taxes __X__ ; U.S. Trustee Quarterly Fees __X__ ; Check if filing is current for: Post-petition tax reporting and tax returns: __X__ . (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.) | | |

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable inquiry believe these documents are correct.

Date: 2/17/09                          Responsible Individual

SUMMARY OF FINANCIAL STATUS

MONTH ENDED: **FEBRUARY 2009**      FILING DATE:   **NOVEMBER 7, 2008**

1.   Debtor in possession (or trustee) hereby submits this Summary of Financial Status. Dollis reported in ($1)

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2.   Asset Structure | | | |
| a. Current Assets (Market Value) | 4,406,542 | 4,784,931 | |
| b. Total Assets (Market Value) | 8,309,969 | 8,798,966 | 10,175,732 |
| c. Current Liabilities | 13,335,482 | 13,751,744 | |
| d. Total Liabilities | 15,726,103 | 16,142,365 | 17,696,998 |
| Need to update this ASAP | | | |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3.   Statement of Cash Receipts & Disbursements for Month | | | |
| a. Total Receipts | 4,331,731 | 3,871,684 | 16,358,377 |
| b. Total Disbursements | 4,308,336 | 4,299,543 | 16,326,749 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | 23,395 | (427,859) | 31,628 |
| d. Cash Balance Beginning of Month | 8,233 | 436,092 | 0 |
| e. Cash Balance End of Month (c + d) | 31,628 | 8,233 | 31,628 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4.   Profit/(Loss) from the Statement of Operations | (72,734) | 18,535 | 177,864 |
| 5.   Account Receivables (Pre and Post Petition) | 3,110,995 | 3,621,253 | |
| 6.   Post-Petition Liabilities | 5,720,602 | 5,497,315 | |
| 7.   Past Due Post Petition Account Payables (Over 30 days) | 0 | 0 | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (If yes, attach listing including date of payment, amount, and reason for payment, and name of payee) | X | |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15.   Check if paid: Post-petition taxes ___X___ ; U.S. Trustee Quarterly Fees ___X___ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___X___ .

      (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable inquiry believe these documents are correct.

Date:   **3/13/09**                         Responsible Individual

## SUMMARY OF FINANCIAL STATUS

MONTH ENDED:  March 2009                FILING DATE:   NOVEMBER 7, 2008

1.   Debtor in possession (or trustee) hereby submits this Summary of Financial Status.  Dollrs reported in ($1)

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2.   Asset Structure | | | |
| a. Current Assets (Market Value) | 4,111,059 | 4,406,542 | |
| b. Total Assets (Market Value) | 8,005,793 | 8,309,969 | 10,175,732 |
| c. Current Liabilities | 13,335,482 | 13,335,482 | |
| d. Total Liabilities | 15,726,103 | 15,726,103 | 17,696,998 |
| Need to update this ASAP | | | |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3.   Statement of Cash Receipts & Disbursements for Month | | | |
| a. Total Receipts | 4,069,189 | 4,331,731 | 20,427,566 |
| b. Total Disbursements | 3,967,854 | 4,308,336 | 20,294,603 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | 101,334 | 23,395 | 132,963 |
| d. Cash Balance Beginning of Month | 31,628 | 8,233 | 0 |
| e. Cash Balance End of Month (c + d) | 132,962 | 31,628 | 132,962 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4.   Profit/(Loss) from the Statement of Operations | (78,802) | (72,734) | 26,328 |
| 5.   Account Receivables (Pre and Post Petition) | 2,824,409 | 3,110,995 | |
| 6.   Post-Petition Liabilities | 5,495,230 | 5,720,602 | |
| 7.   Past Due Post Petition Account Payables (Over 30 days) | 0 | 0 | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (If yes, attach listing including date of payment, amount, and reason for payment, and name of payee) | X | |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15.   Check If paid: Post-petition taxes ___ X ___ ; U.S. Trustee Quarterly Fees ___ X ___ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___ X ___
(Attach explanation, If post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable
inquiry believe these documents are correct.

Date:  3/17/09

Responsible Individual

## SUMMARY OF FINANCIAL STATUS

MONTH ENDED:  April 2009                FILING DATE:    NOVEMBER 7, 2008

1.    Debtor in possession (or trustee) hereby submits this Summary of Financial Status. Dollis reported in ($1)

|  |  | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | Asset Structure | | | |
| | a. Current Assets (Market Value) | 3,466,496 | 4,111,059 | |
| | b. Total Assets (Market Value) | 7,346,632 | 8,005,793 | 10,175,732 |
| | c. Current Liabilities | 12,681,970 | 13,335,482 | |
| | d. Total Liabilities | 15,072,591 | 15,726,103 | 17,696,998 |
| | Need to update this ASAP | | | |

|  |  | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | Statement of Cash Receipts & Disbursements for Month | | | |
| | a. Total Receipts | 4,067,109 | 4,069,189 | 20,427,566 |
| | b. Total Disbursements | 4,197,657 | 3,967,854 | 20,294,603 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | (130,548) | 101,335 | 132,963 |
| | d. Cash Balance Beginning of Month | 132,963 | 31,628 | 0 |
| | e. Cash Balance End of Month (c + d) | 2,415 | 132,963 | 2,415 |

|  |  | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | Profit/(Loss) from the Statement of Operations | (231,023) | (78,802) | (204,695) |
| 5. | Account Receivables (Pre and Post Petition) | 2,120,359 | 2,824,409 | |
| 6. | Post-Petition Liabilities | 5,067,089 | 5,495,230 | |
| 7. | Past Due Post Petition Account Payables (Over 30 days) | 0 | 0 | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount, and reason for payment, and name of payee) | X | |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15.    Check if paid: Post-petition taxes ___X___ ; U.S. Trustee Quarterly Fees ___X___ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___X___
       (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable inquiry believe these documents are correct.

Date: _____        _____

                                        Responsible Individual

SUMMARY OF FINANCIAL STATUS

MONTH ENDED: May 2009          FILING DATE: NOVEMBER 7, 2008

1.   Debtor in possession (or trustee) hereby submits this Summary of Financial Status. Dollis reported in ($1)

|   | | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | Asset Structure | | | |
|   | a. Current Assets (Market Value) | 3,731,835 | 3,466,496 | |
|   | b. Total Assets (Market Value) | 7,391,235 | 7,346,632 | 10,175,732 |
|   | c. Current Liabilities | 12,792,949 | 12,681,970 | |
|   | d. Total Liabilities | 15,825,126 | 15,072,591 | 17,696,998 |
|   | Need to update this ASAP | | | |

|   | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | Statement of Cash Receipts & Disbursements for Month | | | |
|   | a. Total Receipts | 2,606,948 | 4,067,109 | 27,101,623 |
|   | b. Total Disbursements | 2,634,376 | 4,197,657 | 27,126,636 |
|   | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | (27,428) | (130,548) | (25,013) |
|   | d. Cash Balance Beginning of Month | 2,415 | 2,415 | - |
|   | e. Cash Balance End of Month (c + d) | (25,013) | (128,133) | (25,013) |

|   | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | Profit/(Loss) from the Statement of Operations | (228,770) | (231,023) | (664,488) |
| 5. | Account Receivables (Pre and Post Petition) | 2,418,732 | 2,120,359 | |
| 6. | Post-Petition Liabilities | 5,337,465 | 5,067,089 | |
| 7. | Past Due Post Petition Account Payables (Over 30 days) | 0 | 0 | |

At the end of this reporting month:                                                                    Yes      No

8.   Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach          ____   X
     listing including date of payment, amount of payment and name of payee)

9.   Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee)          ____   X

10.  If the answer is yes to 8 or 9, were all such payments approved by the court?          ____   ____

11.  Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount, and          X   ____
     reason for payment, and name of payee)          X   ____

12.  Is the estate insured for replacement cost of assets and for general liability?          ____   X

13.  Are a plan and disclosure statement on file?          ____   X

14.  Was there any post-petition borrowing during this reporting period?          X   ____

15.  Check if paid: Post-petition taxes ___X___ ; U.S. Trustee Quarterly Fees ___X___ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___X___
     (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable
inquiry believe these documents are correct.

Date: 7/24/09
      Revised

Responsible Individual

## SUMMARY OF FINANCIAL STATUS

MONTH ENDED:   June 2009      FILING DATE:   NOVEMBER 7, 2008

1. Debtor in possession (or trustee) hereby submits this Summary of Financial Status. Dollis reported in ($1)

| | | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | Asset Structure | | | |
| | a. Current Assets (Market Value) | 4,079,883 | 3,731,835 | |
| | b. Total Assets (Market Value) | 7,750,271 | 7,391,232 | 10,175,732 |
| | c. Current Liabilities | 12,792,949 | 12,792,949 | |
| | d. Total Liabilities | 15,825,126 | 15,825,126 | 17,696,998 |
| | Need to update this ASAP | | | |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | Statement of Cash Receipts & Disbursements for Month | | | |
| | a. Total Receipts | 2,958,743 | 2,606,948 | 30,060,366 |
| | b. Total Disbursements | 2,904,757 | 2,634,376 | 30,031,393 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | 53,986 | (27,428) | 28,973 |
| | d. Cash Balance Beginning of Month | (25,013) | 2,415 | - |
| | e. Cash Balance End of Month (c + d) | 28,973 | (25,013) | 28,973 |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | Profit/(Loss) from the Statement of Operations | (65,574) | (228,770) | (730,062) |
| 5. | Account Receivables (Pre and Post Petition) | 2,728,451 | 2,418,732 | |
| 6. | Post-Petition Liabilities | 5,762,143 | 5,337,465 | |
| 7. | Past Due Post Petition Account Payables (Over 30 days) | 0 | 0 | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (If yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (If yes, attach listing including date of payment, amount of payment and name of payee] | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (If yes, attach listing including date of payment, amount, and reason for payment, and name of payee] | X | |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |
| 15. | Check if paid: Post-petition taxes   X  ; U.S. Trustee Quarterly Fees   X  ; Check if filing is current for: Post-petition tax reporting and tax returns:   X   (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.) | | |

I declare under penalty of perjury that I have reviewed the above summary and attached pages (if applicable), and after making reasonable inquiry believe these documents are correct.

Date:   X/24/09

Responsible Individual

# EXHIBIT C

## Liquidation Analysis

| Assets | Book Value | Liquidation Value |
|--------|------------|-------------------|
| A/R | $1,900,000 | $1,520,000 |
| Inventory | 1,500,000 | 900,000 |
| Fixed Assets | 3,600,000 | 1,000,000 |
| Other Assets | 200,000 | -0- |
| Total Assets | $7,200,000 | $3,420,000 |

Less payments due Secured Creditor and priority expenses*

| | Amounts Paid | Amount Remaining |
|--------|--------------|------------------|
| Fifth Third Bank | $3,420,000 | -0- |

Amount Available for Unsecured $0

---

\*   Priority expenses include, inter alia, all remaining unpaid post-petition debt, trustee and court fees, claim of landlord's lease approved post-petition, Chapter 7 fees and expenses.

1268288.1

## SCHEDULE A

## SBA Loan A Collateral

| Equipment | Serial Number |
|---|---|
| Komori 6 color 40" printing press | 560 |
| Brausse Die Cutter | 95626 |
| Muller-Martini 10 Clamp Roto Binder RB with 27 Model 201 Pockets | 923163 |
| Wohlenberg DM 3 Knife Trimmer | S13711 |
| Aster Automatic Saddler Sewer | 13555/20155 |
| Headop/Smyth Saddle Sewer | 10089 |
| Headop/Smyth Saddle Sewer | 10090 |
| Headop/Smyth Saddle Sewer | 10091 |
| Dexter Lawson Super Duty Paper Drill model B3 | 516839 |

# SCHEDULE B

## SBA Loan B Collateral

| Equipment | Serial Number |
|---|---|
| Contamination Control | N/A |
| 2 Caterpillar lifts trucks | 8JC02060 |
| | 8JC02301 |
| GPI M80STD Baler | 60988STD |
| Graco Paint pumps | N/A |
| Zirkon | SSDW6611 48011 |
| Didde Comperfector | 346-0009 |
| 3M-Matic Case Sealer | 12992 |
| Label-Aire 2111M | 6143, 19310; 6122-98908 |
| Sullair Air compressor | 003-74153 |
| MBO B-123 folder | L 12/18 |
| United Graphics filtration system | N/A |
| Stretch Wrap Machine | N/A |
| Cheshire labeler #013110001WD | 002870001WD |
| MBO B-26-S-C sheet folder | T04/72 |
| Polar 115 ED cutter #7131713 | |
| Formost FW-250 Wrapping Line | N/A |
| Palamides BA70 banding machine | 1057 |
| Signode LB 2000 Strappers | 1108, 2987, 1250, 2643, 2642, 2644, 2129 |
| Polar 115 cutter #7431698 | 7431698 |
| Pre Press equipment | N/A |

1268288.1

# EXHIBIT D

## EXECUTORY CONTRACTS

| PARTY | TYPE OF CONTRACT | ASSUME/ REJECT |
|---|---|---|
| Synergy Graphics Property<br>14505 – 27th Avenue North<br>Plymouth, MN 55447 | Real estate lease on Plymouth plant | Assumed*<br>(as amended) |
| Keller 1 LLC<br>1257 – 2nd Street North<br>Sauk Rapids, MN 56379 | Real estate leases for St. Cloud office space | Assumed*<br>(as amended) |
| EKCC PO<br>PO Box 31001-0269<br>Pasadena, CA 91110-0269 | Nexpress Digimater E150, Serial # E7E02021 – Plymouth plant | Reject |
| Pitney Bowes<br>PO Box 856042<br>Louisville, KY 40285 | Postage meter, Acct. # 5087896 | Assume |
| Buerkle Acura<br>7926 Brooklyn Blvd.<br>Brooklyn Park, MN 55445 | Acura car lease:  VIN JH4K826659C000970 | Assume |
| Mercedes<br>PO Box 9001680<br>Louisville, KY 40290-1680 | Mercedes car lease VIN 4JGBF71E78A323022 | Assume |
| Toyota Financial Services<br>PO Box 4102<br>Carol Stream, IL 60197-4102 | Toyota auto lease – VIN 5TBDT48116S531493 | Expired**<br>(reject) |
| Land Rover Capital Group<br>PO Box 542000<br>Omaha, NE 68154-8000 | Land Rover auto lease – VIN SALMF15446A228810 | Expired**<br>(reject) |

| | | |
|---|---|---|
| Lexus Financial Services<br>PO Box 4102<br>Carol Stream, IL 60197-4102 | Lexus auto lease – VIN<br>JTJBT20X060104826 | Expired**<br>(reject) |
| GE Capital<br>PO Box 31001-0271<br>Pasadena, CA 9110-0271 | Copier equipment, account #<br>7502522-001 | Reject*** |

   * Leases amended to give Debtor right to terminate on shortened notice.

  ** Lease expired and autos have been (or are in the process of being) returned.

*** Equipment held by Synergy Web Graphics, Inc., and was never equipment of the Debtor